

```
                                                    FILED

                                                    JAN 29 2014
                POSTED ON WEBSITE
                                          UNITED STATES BANKRUPTCY COURT
                                          EASTERN DISTRICT OF CALIFORNIA
```

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

In re                         )    Case No. 12-60444-B-7
                              )
Carlos Gutierrez and          )    DC No. DRJ-2
Maria Gutierrez,              )    DC No. TOG-6
                              )    DC No. DRJ-3
         Debtors.             )
_____)

**MEMORANDUM DECISION REGARDING TRUSTEE'S OBJECTION TO AMENDED EXEMPTIONS, DEBTORS' MOTION TO COMPEL ABANDONMENT AND TRUSTEE'S COUNTERMOTION FOR TURNOVER OF REAL PROPERTY**

David R. Jenkins, Esq., appeared on behalf of the chapter 7 trustee, James Salven.

Thomas O. Gillis, Esq., and Stephen Taylor, Esq., appeared on behalf of the debtors, Carlos and Maria Gutierrez.

Before the court are three related motions which will determine whether the debtors, Carlos and Maria Gutierrez (the "Debtors") will be able to keep their residence (the "Shady Ct. Property" or "Property"), or be required to turn it over to the chapter 7 trustee, James Salven (the "Trustee") so that he can consummate a sale of the Property.

The Trustee objects to the Debtors' amended exemption of the Property (the "Objection"). He contends, *inter alia*, that the original exemption, to which the Trustee did not object, was amended too late, in a bad faith attempt to frustrate a sale of the Property which the court had already approved. The Trustee argues that the Debtors grossly undervalued the Property on their original schedules, rejected the Trustee's admonition to exempt the full value of their equity in the Property, did not object to his subsequent motions to employ a real estate broker and to sell the Property, and did not finally amend the exemptions until after the Trustee had become contractually obligated to deliver possession of the Property.

In response, the Debtors filed a motion to compel the Trustee to abandon the Shady Ct. Property based on the amended exemption. Although the Debtors did not appeal, or move to vacate, the order authorizing sale of the Property, they are refusing to surrender the Property and have recorded a Notice of Lis Pendens in the county records.

Finally, the Trustee also requests an order compelling the Debtors to turn over the Shady Ct. Property so he can complete the sale. For the reasons set forth herein, the Trustee's Objection will be sustained as modified below. The Debtors' attempt to switch their exemptions to those available under Cal. Code Civ. P. ("CCP") § 704 will be denied. Their initial exemptions under CCP § 703.140 will remain in effect. However, their exemption of the Shady Ct. Property will be increased to $18,021, which includes the unused portion of the "wild card" exemption. The motion to abandon the Property will be denied, and the turnover motion will be granted.

This memorandum decision contains the court's findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52(a), made applicable to this contested matter by Federal Rules of Bankruptcy Procedure 7052 and 9014(c). The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and 11 U.S.C. § 522[1] and General Orders 182 and 330 of the U.S. District Court for the Eastern District of California. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A).

**Background and Findings of Fact.**

This bankruptcy commenced with the filing of a voluntary chapter 7 petition on December 24, 2012. With their petition, the Debtors filed the required Schedule A, listing an interest in their residence located on Shady Ct. in Visalia, California. The Shady Ct. Property was valued at $127,748 and encumbered by two mortgages totaling

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated on or *after* October 17, 2005, the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, Apr. 20, 2005, 119 Stat. 23.

$115,050. The Debtors claimed an exemption for the resulting equity in the amount of $12,698, using the California "wild card" exemption CCP § 703.140(b)(5). The Debtors also used the "wild card" to exempt five other assets, including one automobile ($1,401), three bank accounts ($400), and their 2012 income tax refund in the estimated amount of $3,428 (the "Tax Refund"). Altogether, the Debtors claimed "wild card" exemptions totaling $17,927.[2] The Trustee did not object to the initial exemptions.

The meeting of creditors under § 341(a) was scheduled for January 31, 2013 (the "Creditor Meeting"). The Debtors both appeared with their counsel and answered questions submitted by the Trustee regarding their assets. The Trustee told the Debtors and their attorney that the Shady Ct. Property appeared to have more equity than they could exempt using the "wild card" exemption under CCP 703.140 and implicitly suggested that they consider the alternate exemptions available under CCP § 704.[3] The Debtors did not heed the Trustee's warning regarding the value of their residence and choice of exemptions, and a week later, on February 6, 2013, the Trustee filed a "Notice of Assets." The next day the court issued a "Notice to File Proof of Claim Due to Possible Recovery of Assets" to notify all scheduled creditors that the payment of a dividend was possible and of the need to file a proof of claim (the "Asset Notice"). The Debtors and their attorney were served with the Asset Notice. The last date for filing proofs of claim was May 10, 2013, and the Debtors' discharge was entered without objection on April 2, 2013.

Nothing was filed in the case until almost four months later when, on July 24th, the Trustee filed a motion to employ a real estate broker (the "Broker Application"). The

---

[2]The maximum amount of "wild card" exemption available to the Debtors at the commencement of this case was $23,250. The Debtors could have increased their exemption of the Shady Ct. Property to $18,021 without exceeding the statutory limit.

[3]The Trustee stated: "At the meeting of creditors . . ., I told the debtors and their counsel that I believed that the debtors' residence might have a greater value than the debtors could exempt using section 703.140." Declaration of James Edward Salven at 2:2-4, Oct. 17, 2013.

Broker Application stated clearly that the Trustee intended to liquidate the Shady Ct. Property for the benefit of creditors. The Broker Application was served on the Debtors and their attorney. It was approved without objection on July 25, 2013.[4] Presumably, the real estate broker posted a "for sale" sign on the Shady Ct. Property soon thereafter.

The Debtors' only response to the Trustee's motions and the orders by the court was to file a motion to convert their case to chapter 13. That motion was filed on August 2, 2013, and set for hearing almost six weeks later, on September 11, 2013 (the "Conversion Motion"). The Debtors represented in the Conversion Motion that they wanted to pay their creditors and prevent the Trustee from selling their assets. However, they proposed a chapter 13 plan that would pay nothing to the unsecured creditors and would only fund their attorney's fees ($110 per month for a term of 36 months). The Trustee filed an objection to the Conversion Motion on the grounds that (1) the Motion was brought in bad faith, (2) he was already holding more than $4,800 for distribution to unsecured creditors (the actual amount recovered from the Tax Refund), and (3) he had already filed, on August 7, 2013, a motion to sell the Shady Ct. Property, subject to higher and better bids (the "Motion to Sell"). The Trustee's opposition to the Conversion Motion noted that the Debtors had not yet amended their exemptions to protect the Property, and the fact that they might lose their Tax Refund and other exempt assets if they did elect to amend the exemptions.

In reply to the Trustee's objection to the Conversion Motion, the Debtors' attorney requested a two-week continuance of the Conversion Motion on the grounds that the Debtors' telephone was "currently inoperable." Accordingly, the Conversion Motion was

---

[4] This court typically approves applications to employ professionals in a chapter 7 case or on ex parte basis and without delay because chapter 7 trustees have a duty to administer the estate, "as expeditiously as is compatible with the best interests of parties in interest." § 704(a)(1). However, orders authorizing the employment of a professional can be modified or vacated if a party in interest subsequently objects to the employment, or if circumstances change, such as a timely amendment of exemptions, that would make the employment of the professional unnecessary.

rescheduled by pre-hearing disposition to September 25, 2013.

The Motion to Sell was also set for hearing on September 11, 2013. The Debtors did not file any response to the Motion to Sell, even though written objections were required 14 days before the hearing. Debtors' counsel, Stephen Taylor, Esq., appeared telephonically and orally requested a continuance to see how the court might rule on the Conversion Motion. Mr. Taylor stated no other basis for continuing the hearing, or opposing the Motion to Sell, and the Debtors were not willing to offer a higher bid for the Property. At the hearing on the Motion to Sell, the court noted that the Debtors had not yet amended their exemptions to protect the Property, had not filed a timely opposition to the Motion, and had not made a proper showing of the need for a continuance. With regard to the exemption issue, Mr. Taylor's response suggested that the decision to keep the initial "wild card" exemptions was a "strategic decision."[5] There were no competing bidders in the courtroom, and the court granted the Motion to Sell.

On September 16, 2013, the court signed an order authorizing the Trustee to sell the Shady Ct. Property for $165,000, more than $37,000 above the scheduled value (the "Sale Order"). The Sale Order provided for the payment of all liens from the proceeds upon the close of escrow, and the Debtors' exemption ($12,698) "forthwith."

The Debtors finally amended Schedule B and the exemption Schedule C on

---

[5]THE COURT: So what do we do if they come back and amend their exemptions to cover all the proceeds? I mean [i]t seems to me that's really the ultimate issue, they either have to use their exemptions for the house or use them for something else. They can't use them for something else and then oppose the sale of the house, which apparently has about $30,000 of nonexempt equity, based on the current schedules.

MR. SALVEN: This motion's been out there for a while, your Honor. I don't know what they're doing. . . .

MR. TAYLOR: Your Honor, all I can point to is the fact that in certain instances, including this one, client control and client communication has not been at its best, and part of the problem is getting the client on board with strategic decisions and trying to help the client through the - - you know, through this process. Hr'g Tr. 5:1-8, Sept. 11, 2013.

5

September 20, 2013, but did not serve the amended exemptions on the Trustee. They did not move to stay the Sale Order or request relief from the Sale Order based on the amended exemptions. The Debtors amended Schedule B to increase the Tax Refund to $4,824, the amount actually collected by the Trustee. Schedule C was amended to elect the exemptions available under CCP § 704 (which the Trustee initially suggested and which does not include a "wild card" exemption). The Debtors did not increase the stated value of the Shady Ct. Property, but they increased their homestead exemption to $100,000 using CCP § 704.730(a)(1). They also deleted the exemption of the Tax Refund.

The Conversion Motion was heard on September 25, 2013, and denied. By that time, the Debtors had already received their chapter 7 discharge and the court had already approved a sale of the Shady Ct. Property. The Trustee reported that the escrow documents had been signed and the escrow was ready to close, subject to the buyer being able to inspect the Property (Hr'g Tr. 3:23-25, Sept. 25, 2013). On October 3, 2013, the Debtors recorded a Notice of Lis Pendens against the Shady Ct. Property in the Tulare County property records (the "Lis Pendens"). To date, they have refused to give the buyer of the Property access to inspect it.

**The Trustee's Objection.**

The Trustee objects to the Debtors' belated attempt to switch their choice of exemption schedules from CCP § 703.140 to CCP § 704. The Trustee contends that the Debtors have acted in bad faith and that the bankruptcy estate will be prejudiced if the amended homestead exemption is allowed and the Trustee is prohibited from performing on his contract to sell the Property.

The Debtors responded to the Objection with arguments regarding the administrative costs and the lack of value for the estate, arguments that should have been

raised in opposition to the Motion to Sell.[6] In their opposition, the Debtors requested permission to claim the entire "wild card" exemption ($23,250) against the sale proceeds. They accused the Trustee of refusing to negotiate in good faith (after the court had signed the Sale Order) and they tried to discredit the buyers, who by then had a contract to purchase the Shady Ct. Property. The Debtors also offered to give up their exemption of the Tax Refund in exchange for keeping the Property.

**Issue.**

The question the court is asked to decide may be summarized as: Does the Debtors' failure to properly value and exempt their interest in the Shady Ct. Property, until after the Trustee had entered into a contractual agreement to sell the Property, prevent the Debtors from now amending their exemptions and refusing to turnover the Property? The threshold issue here is the Trustee's Objection to the amended exemption. The answer to the other two motions before the court, abandonment vs. turnover, rests with the court's determination of the exemption question.

**Analysis.**

**The Law of Amended Exemptions.** Under § 521(a)(1)(B) and Rule 7001(b) & (c), the debtors have a duty to file, within 15 days after their petition, a complete and accurate schedule of their assets and liabilities. Unfortunately, it is a fact of life that bankruptcy schedules are not always complete and accurate. To accommodate this realty, Rule 1009 supplements Rule 7001 to provide: "[a] voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed." The right to amend under Rule 1009 includes the right to amend the debtor's list of exempt property. *Goswami v. MTC Distributing (In re Goswami)*, 304 B.R. 386,

---

[6] In a supplemental pleading, the Debtors ask the court to consider the case of *Law v. Siegle*, 435 Fed. Appx 697, 2011 WL 2181198 (9th Cir. 2011), which is currently before the U.S. Supreme Court for review. The *Law* case relates to the bankruptcy court's power to equitably surcharge a homestead exemption using § 105. The *Law* case has no application to this proceeding where the Trustee contests the Debtors' right to exempt the Shady Ct. Property in the first place.

7

393 (9th Cir. BAP 2003), *citing In Re Michael*, 163 F.3d 526, 529 (9th Cir. 1998). Rule 1009 is liberally construed, and has been interpreted by courts. *Arnold v. Gill (In re Arnold)*, 252 B.R. 778, 784 (9th Cir. BAP 2000). The debtor's right to amend his or her exemption schedule does not mean that the debtor has an absolute right to have the amended exemption allowed. *Goswami*, 304 B.R. at 393. The critical date for determining a debtor's exemption rights is the petition date. *Id.* at 391-92, *citing White v. Stump*, 266 U.S. 310, 313 (1924).

A claimed exemption is presumptively valid. *Carter v. Anderson (In re Carter)*, 182 F.3d 1027, 1029 n.3 (9th Cir. 1999), *citing 9 Collier on Bankruptcy*, (15 Ed. Rev.), ¶ 4003.04 (1998). However, amendments to the exemption schedule may be disallowed if the debtor has acted in bad faith or if prejudice would result. *Arnold*, 252 B.R. at 784. Bad faith must be established by "concrete evidence." *Id.* at 781. Prejudice requires a showing of actual economic loss to the creditors due to the debtor's delay in claiming an exemption. *Id.* at 787. Delay alone is not bad faith, and prejudice, once ameliorated, is not a basis to deny an exemption. *Id.* at 781. The Ninth Circuit's policy of liberally allowing amendment of an exemption schedule, in the absence of bad faith or prejudice, has the effect of enhancing the debtor's fresh start. *Goswami*, 304 B.R. at 394 (citation omitted).

In *Arnold*, a debtor filed a personal injury claim in state court. Approximately eighteen months later the debtor and his spouse filed a chapter 7 petition, but did not disclose the injury claim in the schedule of their personal property. Neither did they exempt the personal injury claim. The personal injury litigation was listed in their statement of financial affairs as "pending," and they were questioned by the trustee about the injury claim at the meeting of creditors. Over a year later the trustee hired special counsel under a contingency fee arrangement to prosecute the personal injury claim for the estate. The debtors did not object to employment of special counsel, nor did they amend their schedules to disclose and exempt the injury claim. Subsequently, the trustee negotiated a $200,000 settlement of the injury claim in the state court action and

compromises with parties claiming liens against the proceeds, all of which was known to debtors. Finally, after the trustee had spent a substantial amount of time working on the settlement, the debtors amended their schedules to include and exempt the personal injury claim. The settlement agreement had not yet been fully executed.

The trustee filed an objection to the amended exemption on the grounds of bad faith and prejudice. The basis for the trustee's bad faith argument was the timing of the exemption, which was amended more than five months after the settlement was reached. The trustee also argued that creditors would be prejudiced by the exemption. Alternatively, the trustee argued that the debtors should pay the fees and costs of the trustee and special counsel. The debtors responded that they did not realize the personal injury claim was an asset of the estate or that the schedules needed to be amended. The bankruptcy court disallowed the amendment, not on the basis of the passage of time, but because the court did not believe that omission of the injury claim was unintentional.

The court of appeals reversed and allowed the exemption, holding that the record contained insufficient evidence to support a finding of either bad faith, prejudice, or intent to hide the asset. The court held that any prejudice to creditors must be balanced against the prejudice to the debtor of disallowing the exemption. *Id.* at 785 (citation omitted). The court noted that there could be prejudice had the debtor stood by while the estate incurred the cost of litigating the personal injury claim. However, the estate was never at risk for the litigation costs; special counsel was employed under a contingency fee arrangement and could be paid from the proceeds of the settlement. *Id.* at 788. The case was remanded for the bankruptcy court to determine the allowable amount of the exemption and to provide for payment of reasonable fees and costs incurred by the trustee and counsel. *Id.* at 789.

**The Trustee Has Shown Both Bad Faith and Prejudice.** The Bankruptcy Code does not define bad faith. "Like most questions of motive and intent, bad faith is a question of fact. Bad faith may be established by circumstantial evidence, or by inferences drawn from a course of conduct." *Gillman v. Ford (In re Ford)*, 492 F.3d

9

1148, 1156 (10th Cir. 2007) (citations omitted).

The usual ground for a finding of 'bad faith' is some attempt by the debtor to hide assets. *Arnold*, 252 B.R. at 785. Ordinarily, some form of concealment is required to show bad faith in omitting an asset. *In re Cogliano,* 355 B.R. 792, 801 (9th Cir. BAP 2006). The party alleging the bad faith bears the burden of proof. *See Magallanes v. Williams (In re Magallanes)*, 96 B.R. 253, 256 (9th Cir. BAP 1988). The mere fact that a debtor omitted an asset from the schedules, standing alone, is insufficient to prove bad faith. *Id.* In addition, "[b]y itself, claiming an exemption late is simply not bad faith." *Arnold*, 252 B.R. at 786. Bad faith must be determined on a case by case basis and decisions like *Arnold* set a relatively high bar for that determination.

Here, the Trustee asks the court to rule that the Debtors' failure to properly value and timely exempt the Property rises to the level of "bad faith." Based on its review and consideration of the entire record in this case, as summarized above, the court finds the Trustee's argument to be persuasive. The court is also persuaded that the Debtors' belated attempt to amend their exemption of the Shady Ct. Property will cause significant prejudice to creditors.

The Debtors valued their assets and prepared their original exemption schedule in an effort to spread the "wild card" exemption as far as possible. When the Trustee alerted the Debtors that they had undervalued the Shady Ct. Property and might need to switch to a different exemption schedule to keep the Property, they, undoubtedly with the advice of counsel, made a "strategic decision" to reject his admonition. They clung tenaciously to the "wild card" exemption even while the Trustee was moving forward to sell their home in performance of his duties as a chapter 7 trustee. The most obvious reason is the probability that saving the Shady Ct. Property would force them to lose some of the other assets they had exempted, including the Tax Refund. The Debtors and their counsel were given fair notice throughout the case that the Trustee was preparing to list the Shady Ct. Property for sale, yet, it was not until the Trustee sought and obtained an order authorizing a sale of the Shady Ct. Property, and became contractually obligated to that

transaction, that the Debtors finally "woke up" to the reality that they could not have both their house and their Tax Refund. By that time, it was simply too late to "unring the bell." Indeed, the Debtors never asked the court to stay or vacate the Sale Order; they have just refused to comply with it. Such conduct and manipulation of the bankruptcy system can only be viewed as both "bad faith" and "prejudicial to the estate."

That said, the court must still resolve one lingering issue that has not been directly addressed in this dispute. In their response to the Objection, the Debtors ask, in the alternative, that they be allowed to apply the entire "wild card" exemption ($23,250) to the proceeds of the Shady Ct. Property. The Debtors did not formally amend their "wild card" exemption so it would not be appropriate for the court to reallocate that exemption to different assets. However, in fairness, there is some merit to the Debtors' request as it applies to the unused portion of the "wild card" exemption. Under § 105(a), the court may *sua sponte* issue any order that is "appropriate to carry out the provisions of [the Bankruptcy Code]." The Trustee admonished the Debtors to abandon the "wild card" exemption and switch to the traditional "homestead" exemption available under CCP § 704.130. The Debtors rejected this proposal and, as a result, will lose their home, but at all times there was still available to the Debtors approximately $5,323 of unused "wild card" exemption. (*See* footnote 2, *supra*.) The Trustee has always been aware of this discrepancy in his decision to administer the Property, and there is no prejudice to creditors if the Debtors are allowed to simply maximize the benefit that was available in the exemption schedule which they originally chose. Accordingly, the Debtors' "wild card" exemption in the Shady Ct. Property will be increased to $18,021.

**Abandonment vs. Turnover.**

If the Debtors cannot now amend their exemptions to protect the full value of the Shady Ct. Property, what effect will that have on their motion to compel abandonment and the Property, and the Trustee's counter-motion to compel turnover. The Debtors' right to compel abandonment arises under § 554(b) which states:

/ / /

> (b) On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

The Trustee's right to compel turnover of property arises under § 542(a) which states in pertinent part:

> (a) [A]n entity . . . in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title . . . shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

Here, the common thread that connects both §§ 554(b) and 542(a) is the question of whether the Shady Ct. Property has a positive or negative value to the estate. To avoid abandonment and compel turnover, the Debtors must establish that the Shady Ct. Property has "inconsequential value or benefit" to the estate; the Trustee need only establish the converse. Since the Trustee has already entered into a contract to sell the Shady Ct. Property for substantially more than its scheduled value, and since sale of the Property will yield proceeds substantially in excess of the available "wild card" exemption, and since refusal to turn over the Property will expose the estate to administrative liability for breach of contract, the court cannot now find that the Shady Ct. Property has inconsequential value or benefit to the estate.

**Conclusion.**

Based on the foregoing, the court is persuaded that the Debtors grossly undervalued the Shady Ct. Property on their original schedules. When the valuation issue was called to their attention, they refused to amend their exemptions to protect the Property despite the Trustee's admonition to do so. The Trustee therefore proceeded to list the Property for sale and ultimately entered into a contract to sell and deliver the Property. Only after the Trustee had sold the Property, did the Debtors amend their exemptions in an effort to prevent the Property's sale and to frustrate the Trustee's ability to perform his contractual obligations. By then it was too late. The Debtors never moved to stay or to vacate the order approving sale of the Property. The court finds and

concludes that the Debtors have not acted in good faith, and that their refusal to turn over of the Property at this time will have significant adverse consequences to the estate and to the creditors. Accordingly, the Trustee's Objection to the Debtors' amended exemption of the Shady Ct. Property will be sustained in part as follows: The Debtors' original exemptions under CCP § 703.140 will remain in effect. Their exemption of the Shady Ct. Property will be increased to $18,021, which includes the unused portion of the "wild card" that was available in their original exemption schedule. (*See* footnote 2, *supra*.) The Debtors' motion to abandon the Property will be denied, and the motion to compel turnover of the Property will be granted. Separate orders will follow.

Dated: January 29, 2014

W. Richard Lee
United States Bankruptcy Judge

**Instructions to Clerk of Court**
**Service List - Not Part of Order**/Judgment

The Clerk of Court is instructed to send the Order/Judgment or other court generated document transmitted herewith to the parties below. The Clerk of Court will send the Order via the BNC or, if checked ____, via the U.S. mail.

Debtor(s), Attorney for the Debtor(s), Bankruptcy Trustee (if appointed in the case), and __X__ Other Persons Specified Below:

David R. Jenkins, Esq.
Attorney at Law
P.O. Box 1406
Fresno, CA 93716

Stephen Taylor, Esq.
Attorney at Law
1006 H St., #1
Modesto, CA 95354

Office of the U.S. Trustee
U.S. Courthouse
2500 Tulare Street, Suite 1401
Fresno, CA 93721