POSTED ON WEBSITE

RGAF

**FILED**

**JUN 1 2 2014**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | |
|---|---|
| In re ) | Case No. 12-60444-B-7 |
| Carlos Gutierrez and ) | DC No. DRJ-2 |
| Maria Gutierrez, ) | DC No. TOG-6 |
| ) | DC No. DRJ-3 |
| Debtors. ) | |

**MEMORANDUM DECISION AFTER REHEARING ON TRUSTEE'S OBJECTION TO AMENDED EXEMPTION, DEBTORS' MOTION TO COMPEL ABANDONMENT, AND TRUSTEE'S COUNTERMOTION FOR TURNOVER OF REAL PROPERTY**

David R. Jenkins, Esq., appeared on behalf of the chapter 7 trustee, James E. Salven.

Thomas O. Gillis, Esq., appeared on behalf of the debtors, Carlos and Maria Gutierrez.

Before the court are three related matters which will determine whether the debtors, Carlos and Maria Gutierrez (the "Debtors"), will be able to keep their residence (the "Shady Ct. Property" or "Property") or be required to turn it over to the chapter 7 trustee, James E. Salven (the "Trustee"). The central issue is the Debtors' ability to exempt the Shady Ct. Property. The three matters were originally argued before the court on November 26, 2013. In a memorandum decision filed on January 29, 2014, this court denied the Debtors' request to exempt the Property and ruled in favor of the Trustee on all three matters. After the U.S. Supreme Court issued its decision in *Law v. Siegel*, 134 S. Ct. 1188 (2014), a decision which strongly favored the protection of exemptions, this court *sua sponte* vacated its orders on these matters and set each for further hearing. This memorandum decision supersedes and replaces the January 29 ruling.[1]

---

[1] The Debtors appealed the initial rulings to the Bankruptcy Appellate Panel (the "BAP") on February 11, 2014. After the *Law* decision was issued, this court entered an order on March 6, 2014, stating its intention to vacate the rulings and set the matters for further hearing.

1    In the first of the three matters, the Trustee objected to the Debtors' amended

2 homestead exemption of the Shady Ct. Property (the "Objection"). He argued, *inter alia*,

3 that the original exemption, to which he did not object, was amended too late, in a bad-

4 faith attempt to frustrate a pending sale of the Property which the court had already

5 approved. The Objection was supported by a showing that the Debtors had undervalued

6 the Property on their original schedules, had rejected the Trustee's admonition to exempt

7 the full value of the equity in their Property, and did not object to his subsequent motion

8 to employ a real estate broker to sell the Property.

9    In response, the Debtors filed a motion to compel the Trustee to abandon the

10 Shady Ct. Property based on their amended homestead exemption (the "Motion to

11 Abandon"). The Debtors refused to surrender the Property after the court authorized the

12 Trustee to sell it and recorded a notice of lis pendens in the county records. Finally, the

13 Trustee filed a countermotion requesting an order compelling the Debtors to expunge the

14 lis pendens and turn over the Shady Ct. Property so he could complete the sale (the

15 "Turnover Motion").[2]

16    In the prior rulings, the court sustained the Objection, denied the Motion to

17 Abandon, and granted the Turnover Motion. In the order vacating those rulings, the

18 parties were invited to file supplemental briefs addressing (1) the application of *Law v.*

19 *Siegel* to this case, and (2) the application of state exemption law to the facts of the case.

20    For the reasons set forth herein, the court finds that the Supreme Court's decision

21

22    _____

23 The BAP remanded the appeals on March 10, 2014, and the prior orders were *sua sponte* vacated by this court on the same day.

24    [2] When the court first ruled on this matter, the Trustee was under a contractual obligation

25 to sell the Property. The court had previously granted the Trustee's motion to sell the Property without an objection from the Debtors. The Trustee reports that the original buyers have

26 withdrawn their offer to purchase the Property. The Trustee has obtained another offer to purchase the Property, and that motion was set for hearing on April 23, 2014, together with the

27 rehearing of these matters. The new motion to sell the Property was taken under submission

28 pending a ruling on these matters.

in *Law* essentially abrogates the accepted bankruptcy law authority upon which this court based its prior rulings. The Trustee has not established any alternative theory for denying the homestead exemption under nonbankruptcy law. Accordingly, the court will rule in favor of the Debtors on all three matters. The Trustee's Objection will be overruled and the Debtors' amended homestead exemption under California Code of Civil Procedure ("C.C.P.") § 704.730(a)(1) will be allowed. The Debtors' Motion to Abandon will be granted, and the Trustee's Turnover Motion will be denied.

This memorandum decision contains the court's findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52(a), made applicable to these contested matters by Federal Rules of Bankruptcy Procedure 7052 and 9014(c). The court has jurisdiction over these matters pursuant to 28 U.S.C. § 1334, 11 U.S.C. §§ 522, 542 & 554,[3] and General Order Nos. 182 and 330 of the U.S. District Court for the Eastern District of California. These are core proceedings as defined in 28 U.S.C. § 157(b)(2)(A), (B), and (E).

**Background and Findings of Fact.**

The Prior Rulings. This bankruptcy commenced with the filing of a voluntary chapter 7 petition on December 24, 2012. With their petition, the Debtors filed the required schedule A, listing an interest in their residence located on Shady Court in Visalia, California. The Shady Ct. Property was valued at $127,748 and encumbered by two mortgages totaling $115,050. The Debtors claimed an exemption for the resulting equity in the amount of $12,698, using California's "wild card" exemption under C.C.P. § 703.140(b)(5). The Debtors also used the wild card to exempt five other assets, including their 2012 income tax refund in the estimated amount of $3,428 (the "Tax

---

[3] Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036, as enacted and promulgated *after* October 17, 2005, the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA) of 2005, Pub. L. No. 109-8, 119 Stat. 23.

1    Refund"). Altogether, they claimed wild card exemptions totaling $17,927.[4] The

2    Trustee did not object to these original exemptions.

3    The § 341(a) meeting of creditors was scheduled for January 31, 2013. At the

4    meeting, the Trustee told the Debtors and their attorney that the Shady Ct. Property

5    appeared to have more equity than they could exempt using the wild card exemption and

6    implicitly suggested that they consider the alternate set of state law exemptions available

7    under C.C.P. §§ 704.010–704.995.[5] The Debtors did not heed the Trustee's warning

8    regarding the value of the Property and their choice of exemptions, and a week later, the

9    Trustee filed a notice of assets. The court issued a notice to all scheduled creditors that

10   the payment of a dividend was possible and set a bar date for filing proofs of claim. The

11   Debtors' discharge was entered without objection on April 2.

12   Nothing else was filed in the case until almost four months later when, on

13   July 24, 2013, the Trustee filed a motion to employ a real estate broker. That motion

14   stated clearly that the Trustee intended to liquidate the Shady Ct. Property for the benefit

15   of creditors. The motion was served on the Debtors and their counsel and was approved

16   by the court without objection. Soon after, the real estate broker procured a potential

17   buyer for the Property, and on August 7, the Trustee filed a motion to authorize the sale.

18   The Debtors' only response to the Trustee's request to employ a real estate broker

19   was to file a motion to convert their case to chapter 13, which was not set for hearing

20   until September 11, the same day as the hearing on the Trustee's motion to sell the

21   Property. The Debtors represented in the conversion motion that they wanted to pay their

22

23      [4] The Debtors also used the wild card exemption for one automobile ($1,401) and three
24   bank accounts ($400). The maximum amount of the wild card exemption available to the
     Debtors at the commencement of this case was $23,250. The Debtors could have increased their
25   exemption of the Shady Ct. Property to $18,021 without exceeding the statutory limit.

26      [5] The Trustee stated, "At the meeting of creditors . . . , I told the debtors and their
27   counsel that I believed that the debtors' residence might have a greater value than the debtors
     could exempt using section 703.140." Decl. of James Edward Salven 2:2–4, Oct. 17, 2013, ECF
28   No. 73.

4

creditors and prevent the Trustee from selling their assets. However, they proposed a
chapter 13 plan that would pay nothing to the unsecured creditors and would only fund
their attorney's fees. The Trustee opposed conversion on the grounds that (1) the motion
was brought in bad faith, (2) he was already holding $4,824 for distribution to unsecured
creditors (the actual amount recovered from the Tax Refund), and (3) he had already
obtained an offer to buy the Shady Ct. Property. The Trustee's opposition to the
conversion motion noted that the Debtors had not yet amended their exemptions to
protect the equity in the Property. He also noted that amendment of the exemptions
might force the Debtors to give up other exempt assets, including the Tax Refund.

In reply to the Trustee's opposition to conversion, the Debtors' attorney requested
a two-week continuance. Accordingly, the conversion motion was rescheduled by
prehearing disposition to September 25, 2013. However, the Trustee's motion to sell the
Property went forward on September 11. The Debtors' counsel, Stephen Taylor,
appeared at the hearing telephonically and requested a continuance to see how the court
might rule on the conversion motion, but the Debtors did not otherwise file any
opposition to the sale of the Property. At the hearing, the court also noted that the
Debtors had not yet amended their exemptions to protect the Property. There were no
competing offers, and the court granted the Trustee's motion to sell the Shady Ct.
Property for $165,000, substantially more than the scheduled value.

On September 20, 2013, the Debtors filed the Motion to Abandon the Shady
Ct. Property and set that matter for hearing on October 23. At the same time, the Debtors
amended schedules B and C to increase the value of the Tax Refund to $4,824 (the
amount actually collected by the Trustee) and to elect the set of exemptions available
under C.C.P. §§ 704.010–704.995 (which does not include a wild card exemption). The
Debtors did not increase the stated value of the Shady Ct. Property, but they increased
their exemption for the Property to $100,000 using the California homestead exemption
available under C.C.P. § 704.730(a)(1). They also withdrew the exemption of their Tax
Refund. The Trustee responded by filing the Objection to the amended homestead

5

1   exemption and set that matter for hearing on November 26.

2   The conversion motion was heard on September 25, 2013, and denied. By that
3   time, the Debtors had already received their chapter 7 discharge, and the court had
4   already approved a sale of the Shady Ct. Property. The Trustee reported that the escrow
5   documents had been signed and that the escrow was ready to close, subject to the buyers'
6   ability to inspect the Property. However, on October 3, the Debtors recorded a notice of
7   lis pendens against the Shady Ct. Property in the Tulare County property records and
8   refused to make the Property available for inspection. The Trustee responded by filing
9   the Turnover Motion on November 4 and set that matter for hearing on November 26,
10  along with the Objection. The Debtors' Motion to Abandon was rescheduled, and all
11  three matters were argued and submitted at the same time.

12  <u>Events Since the Prior Rulings.</u> In the January 29, 2014, memorandum decision,
13  the court originally sustained the Trustee's Objection and disallowed amendment of the
14  homestead exemption on the grounds of bad faith and prejudice based upon the
15  bankruptcy court's general equitable powers as stated in *Arnold v. Gill (In re Arnold)*,
16  252 B.R. 778, 784 (9th Cir. BAP 2000). Based on that ruling, the court also denied the
17  Motion to Abandon and granted the Turnover Motion, thereby requiring the Debtors to
18  vacate the Property so the Trustee could deliver possession to the buyer and complete the
19  sale.

20  However, on March 4, 2014, the U.S. Supreme Court issued its decision in *Law v.*
21  *Siegel*, reversing and remanding a Ninth Circuit decision which had affirmed the
22  bankruptcy court's equitable surcharge of a debtor's homestead exemption. 134 S. Ct. at
23  1198. In one part of the *Law* decision, the Supreme Court also addressed briefly the
24  respondent's contention that the trial court may disallow amendment of the debtor's
25  exemption based on bad-faith conduct. *See id.* at 1196–97. The Court's response, "[f]or
26  the reasons we have given, the Bankruptcy Code admits no such power," *id.* at 1196,
27  suggests that the "bad faith" rule in *Arnold* may no longer be good law. The Supreme
28  Court went on to clarify that the allowance or disallowance of exemptions based on

6

debtor misconduct should be determined by state law (when such claimed exemptions
arise under state law):

> It is of course true that when a debtor claims a *state-created* exemption, the
> exemption's scope is determined by state law, which may provide that
> certain types of debtor misconduct warrant denial of the exemption . . . .
> But *federal law* provides no authority for bankruptcy courts to deny an
> exemption on a ground not specified in the Code.

*Id.* at 1196–97 (emphases in original) (citations omitted).

Since the *Law* decision called into question the underlying "equitable power"
upon which this court had denied the amended homestead exemption and based all of its
prior rulings, those rulings were vacated. All three matters were then set for further
hearing to give the parties an opportunity to brief *Law*'s impact on the case.

**Discussion and Conclusions of Law.**

Disallowance of Amended Exemptions Based on Bad Faith or Prejudice. "When
a debtor files a Chapter 7 bankruptcy petition, all of the debtor's assets become property
of the bankruptcy estate, subject to the debtor's right to reclaim certain property as
'exempt.'" *Schwab v. Reilly*, 560 U.S. 770, 774 (2010) (citations omitted). The
Bankruptcy Code places a single limitation on the debtor's ability to exercise this right:
That the debtor "file a list of property that the debtor claims as exempt." § 522(*l*). The
Bankruptcy Rules, in turn, specify this procedure, requiring the debtor to "list the
property claimed as exempt under § 522 of the Code on the schedule of assets required to
be filed by Rule 1007," Fed. R. Bankr. P. 4003(a), and to file this schedule "with the
petition or within 14 days thereafter," Fed. R. Bankr. P. 1007(c).

Here, the Debtors had originally claimed a $12,698 wild card exemption for the
Shady Ct. Property under C.C.P. § 703.140(b)(5). After belatedly realizing that the wild
card exemption was not sufficient to cover the equity in the Property and that the Trustee
was moving forward to liquidate the Property, they amended their list of exemptions to
claim a $100,000 homestead exemption using C.C.P. § 704.730(a)(1). The Trustee now
/ / /
/ / /

7

1  objects to this amended homestead exemption.[6]

2          Bankruptcy Rule 1009 provides that a "schedule . . . may be amended by the

3  debtor *as a matter of course at any time* before the case is closed," Fed. R. Bankr. P.

4  1009(a) (emphasis added), and the Ninth Circuit has applied this right to the claim of

5  exemptions. *See Martinson v. Michael (In re Michael)*, 163 F.3d 526, 529 (9th Cir.

6  1998).  However, it has long been accepted in the Ninth Circuit that a debtor's right to

7  amend his or her claim of exemptions is not absolute: "A court may . . . deny the debtors

8  leave to amend 'on a showing of a debtor's bad faith or of prejudice to creditors.'"  *Id.*;

9  *accord Arnold v. Gill (In re Arnold)*, 252 B.R. 778, 784 (9th Cir. BAP 2000) (quoting

10  *Magallanes v. Williams (In re Magallanes)*, 96 B.R. 253, 256 (9th Cir. BAP 1988));

11  *Andermahr v. Barrus (In re Andermahr)*, 30 B.R. 532, 533 (9th Cir. BAP 1983).  Neither

12  "bad faith" nor "prejudice" are expressly mentioned in the Bankruptcy Code as grounds

13  for disallowing an original or amended exemption.  *See Arnold*, 252 B.R. at 784

14  (acknowledging that disallowing amended exemptions based on bad faith or prejudice

15  represents "judge-made exceptions").  Instead, courts have relied on § 105(a) as the

16  source of their equitable power to disallow amended exemptions on those grounds.[7]  *See*

17  *Tyner v. Nicholson (In re Nicholson)*, 435 B.R. 622, 630 (9th Cir. BAP 2010).

18          Impact of *Law v. Siegel*.  However, the reach of § 105(a) has seemingly been

19  curtailed after the Supreme Court's decision in *Law v. Siegel*.  This court must therefore

20  decide whether the power to disallow amended exemptions based on bad faith and

21  prejudice, utilizing § 105(a), survives after *Law*.

22          In *Law*, the Supreme Court addressed the scope and application of § 105(a) to

23  remedy an egregious case of bad-faith conduct by the debtor in litigation of an adversary

24

25  _____

26          [6] The Trustee does not dispute that the Debtors are otherwise eligible for the $100,000
    homestead exemption.

27
          [7] Section 105(a) provides, in pertinent part, "The court may issue any order, process, or
28  judgment that is necessary or appropriate to carry out the provisions of this title."

1    proceeding. *See* 134 S. Ct. at 1194–95. The Court acknowledged that, in addition to the

2    statutory power under § 105(a) to carry out the provisions of the Code, the bankruptcy

3    court "may also possess 'inherent power . . . to sanction abusive litigation practices.'"

4    *Id.* at 1194 (quoting *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 375–76 (2007)).

5    The Court then admonished, "But in exercising those statutory and inherent powers, a

6    bankruptcy court may not contravene specific statutory provisions . . . . Section 105(a)

7    confers authority to 'carry' out the provisions of the Code, but it is quite impossible to do

8    that by taking action that the Code prohibits." *Id.*

9          In the proceeding below, the Ninth Circuit had followed the precedent established

10   in *Latman v. Burdette (In re Latman)*, 366 F.3d 774 (9th Cir. 2004), a decision now

11   abrogated by *Law*. *See Law v. Siegel*, 435 F. App'x 697, 698 (9th Cir. 2011). The Ninth

12   Circuit applied § 105(a) to bestow upon the bankruptcy court the general equitable power

13   to surcharge the debtor's $75,000 homestead exemption to partially compensate the

14   bankruptcy estate for over $500,000 in administrative expenses resulting from the

15   debtor's bad-faith conduct. *See id.* In effect, this amounted to a disallowance of the

16   debtor's homestead exemption.

17         The Supreme Court, however, rejected all of the arguments for such a remedy,

18   finding that surcharging an exemption contravened specific provisions in the Bankruptcy

19   Code and that there was also no statutory basis in the Code for allowing the surcharge on

20   equitable grounds. *See* 134 S. Ct. at 1195–96. The Court noted that the surcharge

21   conflicted with two subsections of § 522: § 522(b), which allows a debtor to exempt

22   property in the first place, and § 522(k), which expressly limits the use of exempt

23   property to pay for administrative expenses. *See id.* at 1195. The Court noted that § 522,

24   with its "carefully calibrated exceptions and limitations," did "not give courts discretion

25   to grant or withhold exemptions based on whatever considerations they deem

26   appropriate," such as the debtor's bad-faith conduct. *Id.* at 1196. Further, outside of

27   § 522, the Court concluded the Code did not admit "a general, equitable power in

28   bankruptcy courts to deny exemptions based on a debtor's bad-faith conduct." *Id.* at

9

1197. Although the holding in *Law* might initially appear to be quite narrow—applicable

only to the equitable surcharge of an exemption—the reasoning behind the *Law* decision

compels the bankruptcy courts to reexamine the traditional theories and assumptions

upon which they have previously utilized the equitable powers of § 105(a). That call is

particularly pertinent here where the ultimate issue, as in *Law*, relates to the debtor's

homestead exemption.

 Turning to this case, the court concludes that the same rationale in *Law*, that

prohibited the equitable surcharge of exemptions, must also be applied to the

disallowance of amended exemptions based on the equitable powers of § 105(a).

Relying solely on the Bankruptcy Code, a court can no longer disallow an amended

exemption on the grounds that the debtor acted in bad faith or that creditors would be

prejudiced because there is no "valid statutory basis for doing so."[8] *Id.* at 1196.

 While claiming an exemption on schedule C for the first time and claiming a new

or different exemption through amendment of that schedule are distinct events, the

Bankruptcy Code does not distinguish between an originally claimed exemption and an

amended exemption. *See, e.g.*, § 522(g) (allowing debtor to claim exemption in estate

property recovered by trustee without referring to such act as claiming an exemption

through amendment). Both kinds of exemptions should be treated the same way under

the Code. Even the Supreme Court in *Law* has noted that "bar[ring] a debtor from

amending his schedules to claim an exemption . . . is much the same thing" as

disallowing an originally claimed exemption. 134 S. Ct. at 1196. As a result, an

amended exemption is subject to the same "carefully calibrated exceptions and

limitations" under § 522 as an originally claimed exemption would be. *Id.*

 This also means that "the court may not refuse to honor the [amended] exemption

absent a valid statutory basis for doing so." *Id.* As mentioned above, bad faith and

---

[8] At oral argument, the Trustee's counsel conceded that *Arnold* is no longer valid after *Law*.

10

1   prejudice are not statutorily created exceptions to the exemption scheme; they are "judge-

2   made exceptions." *Arnold*, 252 B.R. at 784.  The Supreme Court has stated that "[t]he

3   Code's meticulous . . . enumeration of exemptions and exceptions to those exemptions

4   confirm that courts are not authorized to create additional exceptions." *Law*, 134 S. Ct.

5   at 1196.  Therefore, based on *Law*, the court must conclude that established case law,

6   such as *Arnold*, which permits a bankruptcy court to disallow an amended claim of

7   exemption based on bad faith and prejudice, is no longer valid.[9]

8        Applicability of State Law.  Nevertheless, the Court in *Law* left open the

9   possibility that state law may offer some independent basis to disallow an otherwise

10  appropriate exemption that was created under state law.  *See id.* at 1196–97 ("It is of

11  course true that when a debtor claims a *state-created* exemption, the exemption's scope

12  is determined by state law, which may provide that certain types of debtor misconduct

13  warrant denial of the exemption." (emphasis in original)); *cf. Redwood Empire Prod.*

14  *Credit Ass'n v. Anderson (In re Anderson)*, 824 F.2d 754, 756 (9th Cir. 1987) ("In

15  bankruptcy actions, the federal courts decide the merits of state exemptions, but the

16  validity of the claimed state exemption is controlled by the applicable state law.").

17  Because the Debtors here are utilizing California's exemption scheme, the court asked

18  the parties for further briefing on the question, does California law offer any

19  grounds—whether it be bad faith, prejudice, or some other consideration—to disallow

20  the Debtors' homestead exemption?  In response to the court's question, the Trustee

21  offered several theories, all of which are equitable in nature: Waiver, laches, judicial

---

23  [9] The decisions that established the bad faith and prejudice exceptions in the Ninth

24  Circuit were adopting the Eleventh Circuit's approach in *Doan v. Hudgins (In re Doan)*, 672
    F.2d 831 (11th Cir. 1982) (per curiam).  *See Nicholson*, 435 B.R. at 630 (noting that the Ninth

25  Circuit in *Michael* and the BAP in *Andermahr* adopted *Doan*).  However, the Supreme Court
    abrogated *Doan* in *Law*.  *See* 134 S. Ct. at 1196 (rejecting cases cited by respondent, including

26  *Doan*, that permitted courts to disallow original and amended exemptions for bad-faith conduct
    using their general, equitable power because "the Bankruptcy Code admits no such power").  It

27  follows that the cases adopting *Doan* (i.e., the above cited Ninth Circuit cases) have also been

28  abrogated by *Law*.

11

estoppel, equitable estoppel, and res judicata.

_Waiver._  The Trustee first argues that the Debtors have waived their right to claim the homestead exemption under state law.  The waiver analysis begins with C.C.P. § 703.520(a), which requires that a claim of exemption be filed "within 10 days after the date notice of levy on the property claimed to be exempt was served on the judgment debtor."[10]  Applying this state law statute, the Trustee contends that the amended homestead exemption was claimed more than "10 days after the notice of levy."  The Trustee then argues that the failure to timely amend within these 10 days constitutes a "waiver" by looking to C.C.P. § 703.040, which states that "[a] purported contractual or other prior waiver of the exemptions provided by this chapter or by any other statute, _other than a waiver by failure to claim an exemption required to be claimed or otherwise made at the time enforcement is sought_, is against public policy and void."[11]  C.C.P. § 703.040 (emphasis added).  However, the court disagrees with the Trustee's argument.

The first problem with this waiver argument is the fact that there is no "notice of levy" in a bankruptcy proceeding.  The Trustee attempts to circumvent this issue by asking the court to treat either the motion to employ the real estate broker or the motion to sell the Property as the equivalent of a levy in the bankruptcy case.  He then reasons that the Debtors' failure to amend their exemptions within ten days of service of these

---

[10] This ten-day deadline does not appear to be absolute though because a state court may "relieve a person upon such terms as may be just from failure to claim an exemption within the time and in the manner prescribed in the applicable enforcement procedure."  C.C.P. § 703.030(c).

[11] A similar California statute also provides,

An exemption for property that is described in this chapter or in any other statute as exempt may be claimed within the time and in the manner prescribed in the applicable enforcement procedure.  If the exemption is not so claimed, the exemption is waived and the property is subject to enforcement of a money judgment.

C.C.P. § 703.030(a).

12

motions is analogous to a waiver under state law.  The Trustee has not cited any case law
to support this novel argument, and the court declines the Trustee's invitation to expand
the statutory term "notice of levy" to give it the meaning he advocates.

This leads to the second problem with the Trustee's reliance upon C.C.P.
§ 703.520(a) as the basis for finding that the homestead exemption was waived.  That
statute prescribes a procedure for claiming an exemption under state law, and the Trustee
is essentially asking the court to impose that procedural rule in the bankruptcy context.
However, the Supreme Court has held that "[s]tates may not pass or enforce laws to
interfere with or complement the Bankruptcy [Code] or to provide additional or auxiliary
regulations." *Int'l Shoe Co. v. Pinkus*, 278 U.S. 261, 265 (1929).  In this context, the
BAP has explained,

> Although state law may control the "nature and extent" of state law
> exemptions, subject to the limitations set forth in the Bankruptcy Code, the
> manner in which such exemptions are to be claimed, set apart, and
> awarded, is regulated and determined by the federal courts, as a matter of
> procedure in the course of bankruptcy administration, as to which they are
> not bound or limited by state decisions or statutes.

*Nicholson*, 435 B.R. at 633 (internal quotation marks omitted); *accord Cisneros v. Kim
(In re Kim)*, 257 B.R. 680, 687 (9th Cir. BAP 2000) ("While we must and do apply
California substantive exemption law, we will not try to overlay California procedural
devices into the bankruptcy exemption/objection process."), *aff'd mem.* 35 F. App'x 592
(9th Cir. 2002).  To the extent that state law creates procedural rules that in application
would override or conflict with bankruptcy law, such rules are preempted. *See Kim*, 257
B.R. at 687–88.

Here, C.C.P. § 703.520(a)'s ten-day requirement clearly conflicts with the
Bankruptcy Code and Rules with regard to the Debtors' right to claim and to subsequently
amend their exemptions.  Specifically, Rule 1007(c) requires the debtor to file an original
claim of exemption along with the petition or within fourteen days thereafter, and
Rule 1009(a) permits the debtor to file an amended claim of exemption at any time
before the case is closed.  As a result, C.C.P. § 703.520(a) is simply not applicable to

1    bankruptcy proceedings.  The court therefore cannot find that the Debtors waived their

2    homestead exemption based on C.C.P. § 703.520(a).

3        Laches, Judicial Estoppel, and Equitable Estoppel.  Alternatively, the Trustee

4    contends that the amended homestead exemption can be disallowed based on three

5    equitable principles—laches, judicial estoppel, and equitable estoppel.  Although they are

6    not codified in any California statute, the Trustee argues that these principles are

7    grounded in California's case law and are therefore applicable in this matter.

8        It is true that these equitable principles have been developed through the

9    California courts.  *See, e.g.*, *Conti v. Bd. of Civil Serv. Comm'rs*, 1 Cal. 3d 351, 359–60

10   & n.9 (1969) (laches); *MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works*

11   *Co.*, 36 Cal. 4th 412, 422–23 (2005) (judicial estoppel); *City of Long Beach v. Mansell*, 3

12   Cal. 3d 462, 488–90 (1970) (equitable estoppel).  However, the Trustee has cited no case

13   in which a California court has applied any of these equitable doctrines to disallow a

14   statutory exemption.  Again, this bankruptcy court declines the Trustee's invitation to

15   create a new "judge-made" exception to statutory exemption law.

16       Res Judicata.  Lastly, the Trustee argues that res judicata applies in this case to bar

17   the Debtors from claiming a homestead exemption.[12]  Specifically, he contends that the

18   Debtors are "barred by the doctrine of claim preclusion from seeking to amend their

19   exemptions to differ from those that had been asserted as of the time the motion to sell

20   the [P]roperty was granted."[13]

21   / / /

22   / / /

23   / / /

24   / / /

25

26       [12] The Trustee had also raised collateral estoppel in his supplemental brief but then
27   conceded at the hearing that it was not applicable.

28       [13] Trustee's Supplemental Br. 3:23–25, Apr. 14, 2014, ECF No. 159.

The doctrine of res judicata, or claim preclusion,

> treats a judgment, once rendered, as the full measure of relief to be accorded between the same parties on the same claim or cause of action. Claim preclusion prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding.

*Cogliano v. Anderson (In re Cogliano)*, 355 B.R. 792, 802 (9th Cir. BAP 2006) (internal quotation marks omitted).  The Ninth Circuit has previously noted that "a bankruptcy court's order confirming a sale has preclusive effects." *Robertson v. Isomedix, Inc. (In re Int'l Nutronics, Inc.)*, 28 F.3d 965, 970 (9th Cir. 1994).  However, the doctrine of res judicata is inapplicable here, simply because the "claims" in this proceeding are not the same as those at issue when the Trustee moved to sell the Property.

To determine whether successive proceedings involve the same claims for res judicata purposes, the court considers the following factors:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

*Id.* (internal quotation marks omitted).

Here, although the parties' respective rights to sell and to exempt the Shady Ct. Property may arguably arise out of the same nucleus of facts, it cannot be said that the Trustee's right to sell the Property would be necessarily destroyed or impaired by the Debtors' exemption.  Indeed, absent abandonment, the Shady Ct. Property is still property of the bankruptcy estate, and the Trustee still has the power to sell it.  The homestead exemption affects distribution of the sale proceeds after the sale is consummated, but nothing in the Trustee's motion to sell the Property adjudicated how the proceeds would be distributed.  The Trustee's "res judicata" argument is really an "estoppel" argument under another name.  While the amended homestead exemption may obfuscate the need to sell the Property, had there been sufficient equity in the Property to satisfy the homestead exemption and still fund a distribution to unsecured creditors, the Trustee would have no basis to object to the exemption.  The doctrine of

1 res judicata does not bar the Debtors from claiming a homestead exemption in the Shady

2 Ct. Property.

3      Abandonment vs. Turnover.  If the Debtors are allowed to amend their

4 exemptions to protect the full equity in the Shady Ct. Property, the next question is what

5 effect will that disposition have on the Debtors' Motion to Abandon and the Trustee's

6 Turnover Motion?  On the one hand, the Debtors' right to compel abandonment of the

7 Property arises under § 554(b), which states, "On request of a party in interest and after

8 notice and a hearing, the court may order the trustee to abandon any property of the estate

9 that is burdensome to the estate or that is of inconsequential value and benefit to the

10 estate."  On the other hand, the Trustee's right to compel turnover of property arises

11 under § 542(a), which states, in pertinent part,

12      [A]n entity . . . in possession, custody, or control, during the case, of
       property that the trustee may use, sell, or lease under section 363 of this
13      title . . . shall deliver to the trustee, and account for, such property or the
       value of such property, unless such property is of inconsequential value or
14      benefit to the estate.

15      Here, the common thread that connects both §§ 554(b) and 542(a) is the issue of

16 whether the Shady Ct. Property "is of inconsequential value or benefit to the estate" after

17 taking into account the Debtors' amended homestead exemption.  It is clear that since the

18 Debtors are now allowed to claim a $100,000 homestead exemption, there is no equity in

19 the Property for unsecured creditors.  The Shady Ct. Property is now of inconsequential

20 value or benefit to the estate and can be abandoned.  Conversely, turnover of the Property

21 is not warranted.

22 **Conclusion.**

23      Based on the foregoing, the court will rule in favor of the Debtors on all three

24 matters.  The court finds and concludes that there is no basis under applicable law,

25 bankruptcy and state law, to disallow the Debtors' amended homestead exemption of the

26 Shady Ct. Property.  It is their residence within the definition of the California exemption

27 scheme, and on the facts of this case, the bankruptcy court does not have the equitable

28

16

power under § 105(a) to disallow that exemption based on bad faith or prejudice.[14]
Accordingly, the Trustee's Objection to the Debtors' amended homestead exemption of
the Shady Ct. Property will be overruled. With the homestead exemption, the Property
appears to be of no value or benefit to the bankruptcy estate. Accordingly, the Debtors'
Motion to Abandon the Property will be granted, and Trustee's Turnover Motion will be
denied. Separate orders will follow.

Dated: June ___12___, 2014

W. Richard Lee
United States Bankruptcy Judge

---

[14] The court fully appreciates the potential for abuse and the difficulty which chapter 7 trustees may have in the performance of their duties if chapter 7 debtors are given unfettered discretion to amend their exemptions at any time during the administration of the case and retain the proceeds of the trustee's work. Indeed, that was the issue that provoked the dispute in *Arnold* where the debtors amended their exemptions to claim the proceeds of some litigation after the trustee retained special counsel and negotiated a substantial settlement. *See* 252 B.R. at 782. The court is not suggesting here that trustees have no recourse under § 105(a) to seek relief which might be necessary or appropriate to enable them to perform their statutory duties and to "carry out the provisions of [the Bankruptcy Code]." However, if a trustee perceives any potential for dispute with the debtor over the liquidation of assets, as was certainly the situation here, then the trustee should preemptively request relief under § 105(a) with specific reference to the Code section(s) which the trustee is trying to carry out (e.g., § 704(a)(1)). The Debtors' right to amend their exemptions "as a matter of course at any time" is rooted in Bankruptcy Rule 1009(a). However, that principle is qualified by Rule 1001, which states, in pertinent part, "These rules shall be construed to secure the just, speedy, and inexpensive determination of every case and proceeding." When asked to fix a preemptive bar date for the amendment of exemptions, the court may also consider Rule 9006(c), which provides, in pertinent part, that "when an act is required or *allowed to be done at or within a specified time by these rules* . . . , the court for cause shown may in its discretion . . . order the period reduced." Fed. R. Bankr. P. 9006(c)(1) (emphasis added); *see also* Fed. R. Bankr. P. 9006(c)(2) (omitting Rule 1009(a) from list of Bankruptcy Rules where court is prohibited from reducing the time for action). Had the Trustee in this case made a timely request to fix a bar date for the amendment of exemptions, i.e., before he employed the real estate broker, then the court would have had an entirely different set of facts and legal principles upon which to make a ruling.

17

1

2

3

**Instructions to Clerk of Court**
**Service List - Not Part of Order**/Judgment

4

5        The Clerk of Court is instructed to send the Order/Judgment or other court
generated document transmitted herewith to the parties below.  The Clerk of Court will
send the Order via the BNC or, if checked ____, via the U.S. mail.

6

7        Debtor(s), Attorney for the Debtor(s), Bankruptcy Trustee (if appointed in the
case), and  _X__  Other Persons Specified Below:

8

9    David R. Jenkins, Esq.
     Attorney at Law
     P.O. Box 1406
10   Fresno, CA 93716

11   Stephen Taylor, Esq.
     Attorney at Law
12   1006 H St., #1
     Modesto, CA 95354

13
     Office of the U.S. Trustee
14   U.S. Courthouse
     2500 Tulare Street, Suite 1401
15   Fresno, CA 93721

16

17

18

19

20

21

22

23

24

25

26

27

28